**UNITED STATES v. ALELI.**

**UNITED STATES v. LEMBO.**

**Nos. 9621, 9622.**

United States Court of Appeals Third Circuit.

Argued June 21, 1948.

Decided Sept. 16, 1948.

Wilfred R. Lorry, of Philadelphia, Pa. (Charles Lakatos and Freedman, Landy & Lorry, all of Philadelphia, Pa., on the brief), for appellant Aleli.

C. Brewster Rhoads, of Philadelphia, Pa. (Samuel S. Logan, Jr., of Philadelphia, Pa., on the brief), for appellant Lembo.

Edward A. Kallick, of Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and Mc-LAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

These appellants were indicted and convicted of offenses arising under the Selec-

tive Training and Service Act of September 16, 1940, as amended, 50 U.S.C.A.Appendix, § 311, and the Regulations in connection therewith. They appeal from the judgments of conviction.

The charge against Lembo, the registrant, was for failure to notify his Selective Service Board of change in his employment status in accordance with Regulation 626.1 (b), which provides that "Each classified registrant shall, within 10 days after it occurs, and any other person should, within 10 days after knowledge thereof, report to the local board in writing any fact that might result in such registrant being placed in a different classification." Aleli was convicted on the theory that he was in reality Lembo's employer and as such had not notified the particular board of the change in Lembo's job status. The responsibility of the employer to so notify was contained in the instructions on D. S. S. Form 42-A, which is the "Affidavit-Occupational Classification (Industrial)" form. Section 601.163 (a) of the Regulations provides that all forms used together with the instructions printed thereon are made part of the Regulations.

Lembo was born March 21, 1910. He was married and had a child born prior to December 7, 1941. He had a successful beer distributing business in Philadelphia, making over $18,000 a year. On August 16, 1943, while classified as III-A in the draft, he was ordered to report for a physical examination. The next week he obtained a job in defense work at Stout's 69th Street Service, Inc., where a section of an automobile business had been put to use in the manufacture of shells. Appellant Aleli, a cousin of Lembo's, was in charge of that war work at Stout's. On September 1, 1943, Stout's filed a form 42-A requesting occupational classification for Lembo on the ground that he was essential to defense work and could not be replaced within six months. The affidavit in connection with this was executed by James W. Stout as president of the company. Similar 42-A forms were filed by Stout's in December 1943 and April 1944. These were executed by Aleli as general manager of Stout's. The first form said he worked 60 hours a week; the other two said 56 hours a week. The II-B defer-

ments were allowed in each instance. Notices of the granting of these classifications were mailed Lembo on form 57, which carried the instruction that the registrant must notify his local board of any change of circumstances that might affect his classification. Lembo left his employment at Stout's the first week of October 1944 and went back into his own business. He did not return to Stout's until the latter part of January 1945. He did not notify the draft board of this lay-off.

Regarding Aleli, as the government states, "It is true that the appellant can only be guilty of failing to perform a duty under the Act if he was the employer of Lembo." The violation of duty of which Aleli was convicted was primarily his failure to advise the board that Lembo was not working at Stout's from October 1944 to January 25 or 26, 1945, in accordance with the instruction on D.S.S. 42-A, which reads, "If the registrant is deferred, *the employer* must notify the Local Board promptly of any change in the registrant's job status, or if his employment is terminated." (Emphasis added.)

The record does not support the charge that Aleli was the employer. He was the general manager of the war production work of Stout's. He was important in that respect, for he seems to have been the only one who knew anything about it, at least in the beginning. He had a salary of $10,000 a year plus 37½% of the profits. He was Lembo's superior and, under the evidence, undoubtedly gave the latter the job in question and had much to do with his deferment. But clearly, in law and in fact, the corporation was the employer, and Aleli himself was an employee thereof. Cf. United States v. Armour & Company, 3 Cir., 168 F.2d 342. He executed two of the Lembo deferments, but only as general manager of Stout's. The first form filed with the board had been sworn to by Stout as president. Even in the letters to the board from Stout's 69th Street Service, Inc., by its president, apparently written by Stout and requesting deferment for Aleli himself, there is not the slightest indication that Aleli is other than a most vital employee. The alleged offense upon which the government ad-

mittedly relies is the failure of the employer to "notify the Local Board promptly of any change in the registrant's job status, or if his employment is terminated." To justify Aleli's conviction the government urges that "the evidence is sufficient to support the finding that appellant was the employer." But the evidence does not bear out that contention. On the contrary, it shows that Lembo's sole employer was Stout's 69th Street Service, Inc. This is not a case where Aleli is alleged to have conspired with Lembo to evade the Selective Service Law, 50 U.S.C.A.Appendix, § 301 et seq. And Aleli is not charged as agent of the corporation with failure to advise the board concerning Lembo. The case against Aleli stands or falls on the question as submitted to the jury of whether Aleli was Lembo's employer. On this record that relationship cannot be substantiated.

As to Lembo, it was established that the fact of his lay-off from October to January not only "might" have changed his status as set out in the regulation. It "would" have done so, according to the testimony of the secretary of the draft board, who had been in active direction of such classifications. Objection to this testimony was properly overruled by the trial judge. Only that witness knew and could say what he would have done had he known of Lembo's return to the beer distributing business. Searfoss v. Lehigh Valley R. Co., 2 Cir., 76 F.2d 762, 763, 764; cf. Wigmore on Evidence, 3rd Ed., Section 1963. The alteration of draft status which would have taken place here is important as bearing on the criminal intent of the non-reporting registrant. Cf. United States v. Wain, 2 Cir., 162 F.2d 60; United States v. Weiss, 2 Cir., 162 F.2d 447.

Both appellants urge that the trial court's attitude resulted in prejudicing the jury against them. The case took four days to try. It was a difficult, unpleasant matter. The record indicates that the distaste of the trial judge for the alleged offenses unfortunately evidenced itself in his questions and comment. This did result, we think, in substantial harm to the defendants. It would serve no useful purpose to go over the incidents in detail.

Our independent examination of the record satisfies us that their cumulative effect was serious. Refraining from unintentional display of partisanship may not have been easy under the attendant circumstances, but for that very reason was all the more necessary. The appellants were entitled to a fair trial in accordance with the applicable law. That the conduct imputed to them was shameful did not change the norm. This, of course, was understood by the trial court and is shown by his charge. As we see it, however, though the charge did help the situation, the substantial damage already done was not thereby entirely eliminated.

The judgment of conviction will be reversed as to both appellants and remanded to the District Court with directions that a judgment of acquittal be entered in favor of appellant Aleli on the entire record pursuant to Rule 29 of the Criminal Rules, 18 U.S.C.A., and that a new trial be had as to appellant Lembo.